# EXHIBIT 2

| 1 | Michael R. Brooks (7287) |
|---|---|
| | **HUTCHISON & STEFFEN, PLLC** |
| 2 | Peccole Professional Park |
| | 10080 West Alta Drive, Suite 200 |
| 3 | Las Vegas, Nevada 89145 |
| | Telephone: 702-385-2500 |
| 4 | Facsimile: 702-385-2086 |
| | mbrooks@hutchlegal.com |
| 5 | |

___Filed ___Received ___Entered ___Served On
Counsel/Parties of Record

JUN 2 6 2024

Clerk US District Court
District of Nevada
By:_____ Deputy

Ashley E. LaValley (*Pro Hac Vice Forthcoming*)[1]
James D. Mitchell (*Pro Hac Vice Forthcoming*)
**LEE SHEIKH & HAAN LLC**
125 South Clark Street, Suite 1175
Chicago, IL 60603
Telephone: (312) 982-0070
Fax: (312) 982-0071
alavalley@leesheikh.com
jmitchell@leesheikh.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEVADA

| | |
|---|---|
| MPH TECHNOLOGIES OY, | CASE NO.: **3:24-ms-00007** |
| Plaintiff, | [Case No. 3:18-cv-05935-TLT, *MPH Technologies Oy v. Apple Inc.*, pending in the United States District Court for the Northern District of California] |
| vs. | |
| APPLE INC., | |
| Defendant. | **MPH TECHNOLOGIES OY'S MOTION TO COMPEL VIRNETX INC.'S COMPLIANCE WITH SUBPOENA** |

Pursuant to Federal Rules of Civil Procedure 26, 37, and 45(d)(2)(B)(i), MPH Technologies Oy ("MPH") hereby moves this Court for an order compelling VirnetX Inc. ("VirnetX") to produce documents responsive to MPH's subpoena served in connection with the patent infringement lawsuit brought by MPH against Apple, Inc., which is currently pending as

---

[1] Ms. LaValley and Mr. Mitchell expect to comply with LR IA 11-2 within 14 days.

Case No. 3:18-cv-05935-TLT in the United States District Court for the Northern District of California ("the California Lawsuit"). This Motion is based upon the accompanying Memorandum of Points and Authorities, Declaration of James D. Mitchell ("Mitchell Decl."), and attached exhibits.

## STATEMENT OF COMPLIANCE WITH LR 26-6(c)

Pursuant to Local Rule 26-6(c), counsel for MPH and VirnetX met and conferred via telephone on April 4, 2024, and June 20, 2024, in good faith to resolve the dispute without court intervention, as detailed in the Declaration of James D. Mitchell, submitted herewith. *See* Mitchell Decl. at ¶¶4–6. Despite a sincere effort to resolve or narrow the dispute during the meet-and-confer conference, the parties were unable to resolve or narrow the dispute without court intervention.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

MPH's subpoena, served on VirnetX more than four months ago, seeks a narrow set of documents from VirnetX relating to two patent infringement lawsuits that VirnetX filed against Apple, both of which share similarities with MPH's own case against Apple in the Northern District of California. In particular, the VirnetX suits involved similar patented technology and some of the very same accused Apple products and features. Based on the significant similarities between the technologies and accused instrumentalities at issue, the licenses and damages expert reports from the VirnetX lawsuits are highly relevant to MPH's damages case in the California Lawsuit, including the determination of reasonable royalty damages.

VirnetX has objected to producing any of the requested documents based on an overly restrictive stance on relevance and unspecified claims of undue burden. VirnetX should be ordered to produce the requested document promptly.

### II.   FACTUAL BACKGROUND

#### A.  MPH's Patent Infringement Claims in the California Lawsuit

The underlying California Lawsuit arises out of Apple's infringement of MPH's patents directed to technologies to ensure secure online communications. *See, generally, MPH Techs. Oy v. Apple Inc.*, Case No. 3:18-cv-05935 (N.D. Cal.), Compl. (Dkt. 1) (Mitchell Decl., Ex.C). More

specifically, MPH's U.S. Patent No. 8,037,302 (the "'302 patent"), entitled "Method and System for Ensuring Secure Forwarding of Messages," is asserted against Apple's Always On VPN feature, which is provided and enabled by Apple on Apple's iOS and iPadOS devices. Always On VPN is a virtual private network ("VPN") offering from Apple which allows enterprise customers such as businesses, schools, or government entities to "tunnel" all IP traffic back to the organization's VPN server(s), allowing them to monitor and filter traffic to and from employee devices, secure data within their network, and restrict device access to the internet. *See* "VPN overview for Apple device deployment" *at* https://support.apple.com/guide/deployment/vpn-overview-depae3d361d0/web.

MPH has also accused Apple of directly and/or indirectly infringing five related patents, U.S. Patent Nos. 8,346,949 (the "'949 patent"), 9,762,397 (the "'397 patent"), 9,712,494 (the "'494 patent"), 9,712,502 (the "'502 patent"), and 9,838,362 (the "'362 patent"), which claim inventions facilitating the sending of messages through secure connections using an intermediate computer. MPH has accused Apple of directly and/or indirectly infringing these patents through devices, servers, and associated software that support, are used for, and practice Apple's iMessage, FaceTime, and other services which utilize the Apple Push Notification (APN) service.

**B. VirnetX's Litigation with Apple ("Texas Lawsuits")**

In 2010, VirnetX sued Apple and others in the Eastern District of Texas for infringing patents claiming "technology for providing security over networks such as the Internet" based on Apple's FaceTime and "VPN on Demand" features. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1314–15 (Fed. Cir. 2014). "VPN on Demand" is a VPN offering from Apple which Apple describes as letting "Apple devices automatically establish a connection on an as-needed basis." *See* https://support.apple.com/guide/deployment/vpn-overview-depae3d361d0/web.

That case proceeded to trial, resulting in a jury verdict in VirnetX's favor of $368.2 million, which was later vacated by the U.S. Court of Appeals for the Federal Circuit and remanded back to the district court for a new trial. *Virnetx*, 767 F.3d at 1315–16. The retrial resulted in a damages award of $302.4 million for infringement of VirnetX's patents by Apple's VPN On Demand and FaceTime. Based on public filings, VirnetX's damages expert testified that, based on his analysis

of comparable licenses, a reasonable royalty for Apple to pay for use of the asserted patents would be between $1.20 and $1.67 per unit. *See VirnetX Inc. v. Apple Inc.*, 324 F. Supp. 3d 836, 844 (E.D. Tex. 2017). In the post-trial order, the district court acknowledged that the jury had adopted VirnetX's $1.20 per unit royalty rate for Apple's infringement by offering the VPN On Demand and FaceTime services. The district court decided that the royalty rate awarded by the jury was supported by substantial evidence, and rejected Apple's proposed $0.10 per unit rate that was allegedly based on an earlier license given to Microsoft. The Federal Circuit affirmed the $302.4 million award. *See VirnetX, Inc. v. Cisco Sys., Inc.*, 748 F. App'x 332 (Fed. Cir. 2020).

In November 2012, VirnetX filed a second lawsuit in the Eastern District of Texas against Apple for a redesigned VPN on Demand and redesigned FaceTime service. *See VirnetX Inc. v. Apple, Inc.*, 792 F. App'x 796, 798, 801 (Fed. Cir. 2019). In that case, the district court held a jury trial in April 2018. The jury returned a verdict finding both VPN on Demand and FaceTime to infringe and awarding $503 million in damages. *Id.* at 798, 801–802. On August 30, 2018, the district court denied Apple's JMOL motions and found that the jury's implied royalty rate of $1.20 proffered by VirnetX's expert based on comparable licenses was supported by substantial evidence. *Id.* at 798.

Later in that case, the Federal Circuit affirmed infringement of two patents by the redesigned VPN on Demand, but reversed infringement of two other patents by the redesigned FaceTime service. *Id.* at 807–812. The Federal Circuit vacated the damage award and remanded the case for further proceedings on damages. *Id.* at 812–813. After the damages-only trial, the jury returned a verdict in the amount of $502,848,847.20, having reached this amount by using a $0.84 reasonable royalty rate. *See VirnetX, Inc. v. Apple Inc.*, Case No. 6:12-cv-00855 (E.D. Tex.), Dkt. 977 & Dkt. 1037 at 5. That verdict was later vacated by *VirnetX Inc. v. Apple, Inc.*, 2023 WL 2770074 (Fed. Cir. Mar. 31, 2023) on a ground unrelated to the damages verdict after the Patent Office invalidated VirnetX's patents in parallel administrative proceedings challenging the validity of the patents.

**C. VirnetX Refused to Comply with MPH's Subpoena Seeking Relevant Documents**

As part of discovery in the California Lawsuit, MPH served a subpoena on VirnetX on

1    February 12, 2024, seeking **(1)** patent license agreements entered into by or for VirnetX relating

2    to virtual private networking, secure messaging, or video conferencing (Request for Production

3    Nos. 1–3); **(2)** patent license agreements produced or identified as relevant during the Texas

4    Lawsuits (Request for Production Nos. 4–5); **(3)** patent license agreements entered into by or for

5    VirnetX relating to infringement of claims asserted by or for VirnetX against Apple (Request for

6    Production No. 6); and **(4)** damages expert reports from the Texas Lawsuits (Request for

7    Production Nos. 7–8). Mitchell Decl., Ex. A, MPH's Subpoena to VirnetX. On March 22, 2024,

8    VirnetX served its objections. Mitchell Decl., Ex B, VirnetX's Objections and Responses to

9    MPH's Subpoena. Counsel for the parties conferred regarding VirnetX's Objections and

10   Responses to MPH's Subpoena on April 4, 2024. VirnetX's counsel did not agree to produce any

11   responsive documents during the April 4, 2024 meet-and-confer, but indicated that VirnetX was

12   still considering whether it could agree to produce certain license agreements requested by the

13   subpoena. *See* Mitchell Decl. ¶¶4. Following further follow up correspondence from MPH and an

14   additional pre-filing meet-and-confer on June 20, 2024, VirnetX confirmed that it remains

15   unwilling to produce the requested documents, prompting this motion. *See* Mitchell Decl. ¶¶4–6.

16   **III.    ARGUMENT FOR THE REQUESTED DISCOVERY**

17            **A. Applicable Law**

18            Rules 37(a)(2) and 45(d)(2)(B)(i) of the Federal Rules of Civil Procedure provide that a

19   party may move to compel disclosure or discovery considering the relevance and need for the

20   information sought. The scope of discovery through a Rule 45 subpoena is the same as the scope

21   permitted under Federal Rule of Civil Procedure 26(b)(1). *Evenstar Master Fund SPC v. Cao*,

22   2022 WL 476095, at *2 (D. Nev. Feb. 15, 2022). Rule 26(b)(1) allows discovery of information

23   "relevant to any claim or defense, proportional to the needs of the case, and non-privileged." *Id.*

24   (citing Fed. R. Civ. P. 26(b)(1)). "Information within this scope of discovery need not be

25   admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1)). "The person… opposing a

26   motion to compel bears the burden of establishing why the discovery should not be had." *Evenstar*

27   *Master Fund SPC*, 2022 WL 476095, at *3; *see also V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306,

28   309 (D. Nev. 2019).

While the Northern District of California was the issuing court for the subpoena to VirnetX, a motion for an order to VirnetX must be made in the court where discovery is or will be taken. Fed. R. Civ. P. 37(a)(2) and 45(d)(2)(B)(i). Here, discovery is sought from VirnetX in this district as VirnetX has principal offices in this district (Zephyr Cove, Nevada).

**B. The Discovery Sought by MPH Is Relevant to Damages in the California Lawsuit**

In the California Lawsuit, MPH seeks damages in the form of a reasonable royalty pursuant to 35 U.S.C. § 284. The factors set forth in *Georgia-Pacific v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) are commonly considered to determine a reasonably royalty. The second and twelfth *Georgia-Pacific* factors consider "the rates paid by the licensee for the use of other patents comparable to the patent in suit," and "[t]he portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions," respectively. *Id.* Courts, including the Federal Circuit, have allowed damages experts in patent infringement lawsuits to rely on jury verdicts from other lawsuits as part of a hypothetical license negotiation if the prior verdicts are sufficiently comparable. *See Applied Med. Res. Corp. v. U.S. Surgical Corp.*, 435 F.3d 1356, 1365–66 (Fed. Cir. 2006); *2-Way Computing, Inc. v. Sprint Sols., Inc.*, 2015 WL 2365648, at *5 (D. Nev. May 18, 2015) ("The court has found no rule that prohibits an expert from considering a jury verdict in his royalty rate calculations if that jury verdict pertains to a matter that it sufficiently comparable to the instant matter."); *Sprint Commc'ns Co. L.P. v. Comcast Cable Commc'ns LLC*, 225 F. Supp. 3d 1233, 1248 (D. Kan. 2016).

Subject to expert analysis and opinion, the documents requested by MPH's subpoenas from the Texas Lawsuits are relevant to the reasonable royalty analysis, including *Georgia-Pacific* factors 6 and 12, because the technology at issue in the Texas Lawsuits is so closely related to and overlaps with the technology and inventions at issue in the California Lawsuit. Many of the accused Apple features and products in the Texas Lawsuits are *the same* as those accused in the California Lawsuit. The infringement allegations in both VirnetX lawsuits were based in part on the FaceTime feature of Apple's iPhone, iPad, and Mac devices, as they are in MPH's case against

1 | Apple. *See Virnetx, Inc. v. Cisco Sys., Inc.*, 767 F.3d 1308, 1315 (Fed. Cir. 2014); *VirnetX Inc. v.*
2 | *Apple, Inc.*, 792 F. App'x 796, 798, 801 (Fed. Cir. 2019); *MPH Techs. Oy v. Apple Inc.*, Case No.
3 | 3:18-cv-05935 (N.D. Cal.), Complaint, Dkt. 1. Moreover, both the California Lawsuit and the
4 | Texas Lawsuits involved VPN features supported by Apple's iPhones and iPad devices. Whereas
5 | the Texas Lawsuits involved Apple's "VPN On Demand" feature, which automates establishment
6 | of a VPN connection on an as-needed basis, *see Virnetx*, 767 F.3d at 1315; *VirnetX*, 792 F. App'x
7 | at 800, MPH has accused the "Always On VPN" feature supported by Apple, which requires a
8 | VPN connection for all communications. *See MPH Techs. Oy v. Apple Inc.*, 3:18-cv-05935 (N.D.
9 | Cal.), Complaint, Dkt. 1. Both VPN features are described together on Apple's website at this
10 | URL: https://support.apple.com/guide/deployment/vpn-overview-depae3d361d0/web.
11 | Considering that the accused products and features are the same or closely related, it is not
12 | surprising that the patents at issue in both the Texas Lawsuits and the California Lawsuit are also
13 | directed to similar technologies that enable secure network communications. *See, e.g., Virnetx*,
14 | 767 F.3d at 1314–15; *VirnetX*, 792 F. App'x at 798–99; *MPH Techs. Oy v. Apple Inc.*, Case No.
15 | 3:18-cv-05935 (N.D. Cal.), Complaint, Dkt. 1. Accordingly, subject to further expert opinion and
16 | analysis, MPH may rely on the VirnetX verdicts themselves and/or the licenses underlying those
17 | verdicts in assessing and proving proper damages in the California Lawsuit.

18 |       The expert reports of each of Virnetx's and Apple's damages experts submitted in the
19 | Texas Lawsuits are highly relevant and discoverable at least because they will include information
20 | that was considered by the testifying experts and which MPH's damages expert will consider in
21 | assessing the comparability of those verdicts, including the licenses on which they are based, to
22 | the hypothetical license to MPH's asserted patents in the California Lawsuit. In fact, in another
23 | patent infringement lawsuit brought against Apple, Apple chided and moved to exclude a patent
24 | owner's damages expert's reliance on the verdicts from the Texas Lawsuits because he admitted
25 | that "he has never seen the VirnetX licenses or even [VirnetX's damages] expert report in
26 | *VirnetX*." Mitchell Decl., Ex. D, *R.N. Nehushtan Trust Ltd. v. Apple Inc.*, Case No. 3:22-cv-1832
27 | (N.D. Cal.), Dkt. 168, Apple's Mot. to Exclude, at p. 22; *see also* Mitchell Decl., Ex. E, *R.N.*
28 | *Nehushtan Trust Ltd. v. Apple Inc.*, Case No. 3:22-cv-1832 (N.D. Cal.), Dkt. 190, Apple's Reply

ISO of Mot. to Exclude, at p. 13. The damages experts' reports in the VirnetX lawsuits may also contain other information relevant to the California Lawsuit including, for example, Apple's own assessment of its potential patent infringement liability for similar patents and the same or similar accused instrumentalities. *See High Point SARL v. Sprint Nextel Corp.*, 2012 WL 1533213, at *9 (D. Kan. Apr. 30, 2012) (overruling irrelevance objection and ordering production of damages expert reports and deposition transcripts from accused infringer's prior litigation).

Courts have ordered the production of documents from a separate litigation where the same products were accused in both cases. *See Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 3246094, at **21–22 (N.D. Cal. June 26, 2013); *Alloc Inv. v. Unilin Beheer B.V.*, 2006 WL 757871, at *5 (E.D. Wis. Mar. 24, 2006). In *Apple v. Samsung*, the court ordered the production of certain documents, including documents pertaining to damages theories, from the VirnetX litigation because both cases involved FaceTime and therefore fell within the broad scope of relevance, despite finding that the patents at issue *did not* cover sufficiently similar technologies to meet the court's "technological nexus" test. *Apple, Inc.*, 2013 WL 3246094, at *21–22.

Here, the relevance and discoverability of the VirnetX documents are even more apparent because MPH and VirnetX's patents are directed to highly similar technology regarding secure network communications. Courts have similarly ordered the production of licenses upon a showing that the technology at issue is sufficiently similar. *See High Point SARL*, 2012 WL 1533213, at *7–8; *Trading Techs. Intern., Inc. v. eSpeed, Inc.*, 2007 WL 704525, at *1–2 (N.D. Ill. Mar. 1, 2007) (compelling production of patent licenses that "may be of assistance in determining a reasonable royalty rate" even if those licenses would "not carry weight in the final determination" at trial); *Barnes & Noble, Inc. v. LSI Corp.*, 2012 WL 1564734 at *5–6 (N.D. Cal. May 2, 2012) (finding that "possibly-comparable license agreements" were discoverable).

VirnetX has objected to the production of licenses on the basis that "VirnetX is not aware that Plaintiff has made any showing that VirnetX's licenses are technologically or economically comparable to the hypothetical negotiation in [the California Lawsuit]." As explained above, the VirnetX's patents *are* technologically comparable to MPH's asserted patents in the California Lawsuit. In addition, notwithstanding VirnetX's position, MPH is not required to make such a

1   showing (which it has done amply) to be entitled to discovery. The question of whether licenses

2   are technologically or economically comparable is a fact question typically reserved for the jury.

3   *See, e.g., Bio-Rad Lab'ys, Inc. v. 10X Genomics Inc.*, 967 F.3d 1353, 1372–74 (Fed. Cir. 2020);

4   *Unwired Planet, LLC v. Apple Inc.*, No. 13-CV-04134-VC, 2017 WL 589195, at *2 (N.D. Cal.

5   Feb. 14, 2017). In fact, MPH is not required to even show at this stage that the licenses and other

6   information it seeks in discovery will ultimately be admissible. Fed. R. Civ. P. 26(b)(1). Rather,

7   "[r]elevancy for discovery is flexibly and has a broader meaning that admissibility at trial." *See*

8   *Phoenix Sols. Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 582–83 (N.D. Cal. 2008) (citing

9   *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 903 (7th

10  Cir. 1981)).

11          MPH has made a showing that the documents are relevant to damages and the reasonable

12  royalty analysis in the California Lawsuit, as explained above.

13          **C. The Discovery Sought by MPH is Unavailable from Apple**

14          VirnetX has objected to certain requests on the basis that the discovery sought is "within

15  the possession, custody, or control of a party to [the California] litigation." *See* Mitchell Decl., Ex.

16  B. But Apple has stated in public filings that it does not have access to at least some of the requested

17  documents based on the applicable protective order. *See* Mitchell Decl., Ex. D, *R.N. Nehushtan*

18  *Tr. Ltd. v. Apple Inc.*, Case No. 3:22-cv-1832 (N.D. Cal.), Dkt. 168, Apple's Mot. to Exclude, at

19  p. 3 ("Apple does not have access to [the VirnetX licenses introduced during the *VirnetX* litigation]

20  here under the applicable protective order.") & pp. 20–21 ("Apple did not have access to materials

21  from the *VirnetX* case under the *VirnetX* protective order."); *see also* Mitchell Decl., Ex. E, *R.N.*

22  *Nehushtan Trust Ltd. v. Apple Inc.*, Case No. 3:22-cv-1832 (N.D. Cal.), Dkt. 190, Apple's Reply

23  ISO of Mot. to Exclude, at p. 13 (stating that VirnetX licenses are "not available in this case").

24  Further, when VirnetX's counsel was asked to confirm that Apple had *all of the documents* in its

25  possession responsive to the subpoena, counsel was unable to do so. *See* Mitchell Decl., Ex. G.

26          Moreover, in responding to MPH's motion to compel Apple to produce certain licenses

27  and other documents from the *VirnetX* lawsuits in the California Lawsuit, Apple asserted that MPH

28  should seek VirnetX's licenses directly from VirnetX "given that the documents would implicate

1    VirnetX's confidentiality concerns, not Apple's." *See* Mitchell Decl., Ex. F, *MPH Techs. Oy v.*
2    *Apple, Inc.*, Case No. 3:18-cv-05935-TLT, Dkt. 130, at p. 4 n. 3 (N.D. Cal.). MPH does not
3    necessarily agree with Apple's self-serving objection based on VirnetX's confidentiality concerns,
4    and the Court in the California Lawsuit has not yet ruled on that Motion. Nevertheless, VirnetX's
5    production of the requested documents, including its own confidential licenses and the expert
6    reports which also rely on those licenses, would obviate Apple's objections to producing
7    documents that include VirnetX's confidential information. And, in fact, when VirnetX's counsel
8    was asked to confirm that VirnetX does not object to *Apple's* disclosure and production of the
9    materials sought by MPH's subpoena, VirnetX's counsel was again unwilling to do so. Mitchell
10   Decl., Ex. G.

11        In short, to ensure that a complete set of documents responsive to MPH's subpoena are
12   obtained, VirnetX should be compelled to produce them, particularly where VirnetX has not
13   substantiated any claims of undue burden, as explained below.

14   **D.  Complying with MPH's Subpoena Presents No Undue Burden**

15        MPH requests a narrow set of easily identifiable documents from two lawsuits. The
16   production of these documents should present no significant burden on VirnetX. In fact, the
17   requested documents are probably readily accessible in the files of VirnetX's trial counsel, who is
18   also representing VirnetX in connection with MPH's subpoena.

19        VirnetX has not articulated any specific undue burden in complying with MPH's subpoena
20   in any correspondence or during the parties meet and confer. "[I]t has long been clear that a party
21   claiming that discovery imposes an undue burden must 'allege specific facts which indicate the
22   nature and extent of the burden, usually by affidavit or other reliable evidence.'" *Nationstar*
23   *Mortg., LLC v. Flamingo Trails No. 7 Landscape Maint. Ass'n*, 316 F.R.D. 327, 334 (D. Nev.
24   2016). To the extent VirnetX relies on its confidentiality obligations to other parties to the
25   agreements or to Apple, that concern is allayed by the agreed protective order entered in the
26   California Lawsuit which includes strict confidentiality provisions governing materials exchanged
27   during discovery. *MPH Techs. Oy v. Apple Inc.*, Case No. 3:18-cv-05935 (N.D. Cal.), Dkt. 90
28   (included with Mitchell Decl., Exhibit A). VirnetX has not identified any deficiencies with this

protective order. Accordingly, VirnetX's objections that any of the requests in MPH's subpoena impose an undue burden should be overruled.

## IV. CONCLUSION

For the foregoing reasons, MPH respectfully requests that the Court grant this Motion and issue and order requiring VirnetX to promptly comply with MPH's subpoena by producing documents responsive to the requests therein.

HUTCHISON & STEFFEN, PLLC

*/s/Michael R. Brooks (with permission)*
Michael R. Brooks, Esq. (7287)
**HUTCHISON & STEFFEN, PLLC**
Peccole Professional Park
10080 West Alta Drive, Suite 200
Las Vegas, Nevada 89145
Telephone: 702-385-2500
Facsimile: 702-385-2086
mbrooks@hutchlegal.com

LEE SHEIKH & HAAN, LLC

*/s/Ashley E. LaValley (PHV forthcoming)*
Ashley E. LaValley
James D. Mitchell
**LEE SHEIKH & HAAN LLC**
125 South Clark Street, Suite 1175
Chicago, IL 60603
Telephone: (312) 982-0070
Fax: (312) 982-0071
alavalley@leesheikh.com
jmitchell@leesheikh.com

1

## <u>CERTIFICATE OF SERVICE</u>

2

I hereby certify that on the 25th day of June, 2024, I served a true and correct copy of the

3

foregoing **MPH TECHNOLOGIES OY'S MOTION TO COMPEL VIRNETX INC.'S**

4

**COMPLIANCE WITH SUBPOENA** via email (by agreement) and first-class mail as follows:

5

6

Daniel Pearson
Jason Cassady
**CALDWELL CASSADY CURRY P.C.**
2121 N. Pearl St., Suite 1200
Dallas, Texas 75201
Telephone: (214) 888-4848
Facscimile (214) 888-4849
dpearson@caldwellcc.com
jcassady@caldwellcc.com

7

8

9

10

11

*Attorneys for VirnetX, Inc.*

12

13

14

*/s/Ashley E. LaValley (PHV forthcoming)*
Ashley E. LaValley
James D. Mitchell
**LEE SHEIKH & HAAN LLC**
125 South Clark Street, Suite 1175
Chicago, IL 60603
Telephone: (312) 982-0070
Fax: (312) 982-0071
alavalley@leesheikh.com
jmitchell@leesheikh.com

15

16

17

18

19

20

21

22

23

24

25

26

27

28